**In re Peter J. JOING, Debtor.**

**Peter J. JOING, Plaintiff,**

v.

**O & P PARTNERSHIP, Defendant.**

**Bankruptcy No. 3–84–891.
Adv. No. 3–85–86.**

United States Bankruptcy Court,
D. Minnesota,
Third Division.

Dec. 31, 1987.

William Kampf, Ann Ladd, Minneapolis, Minn., for plaintiff.

Peter Orlins, Richfield, Minn., for defendant.

## ORDER

DENNIS D. O'BRIEN, Bankruptcy Judge.

The matter before the Court is Plaintiff's/Debtor's motion for this Court to reconsider its June 26, 1986 Order, 61 B.R. 980, in this adversary proceeding, in light of the Federal District Court Order, dated February 3, 1987, 82 B.R. 495, vacating that Order and remanding this proceeding to the Bankruptcy Court for further review. A hearing was held on August 13, 1987, and both parties submitted written memoranda in support of their positions. Ann Ladd appeared for the Debtor; and Peter Orlins appeared for O & P Partnership (O & P). Based on the arguments of counsel and the record and files herein, the Court makes this Order pursuant to the Federal and Local Rules of Bankruptcy Procedure.

### I.

The Debtor commenced this proceeding pursuant to 11 U.S.C. § 548 to recover real estate sold at a mortgage foreclosure sale on November 10, 1983. The facts are fully described in this Court's June 26, 1986, Order and in the District Court's February 3 Order; and therefore, will not be re-

peated here. The issue at trial and on appeal to the District Court was whether the Plaintiff received the reasonably equivalent value for his interest transferred at the foreclosure sale. At trial, this Court determined that the Debtor had no equity in the property transferred as the property was encumbered by $126,982.50 in liens and had a fair-market value no greater than $90,000.00. The Court found that the value of the interest transferred was the value of the foreclosing lien, $12,293.00; that Plaintiff had only a one-half interest in that amount; and that Plaintiff received $12,293.00 in the form of cancellation of this joint and several liability on the underlying indebtedness of the foreclosing lien. Based on this finding, the Court concluded that the Debtor received at least the reasonably equivalent value of his interest transferred.

The District Court determined that a comparison of a bid price to the sum of the Debtor's equity in the property and the value of the foreclosing lien, is not always and, particularly in this case, was not an appropriate method of determining whether a Debtor received the reasonably equivalent value of the interest transferred. The Court stated that while that method insured that the Debtor would be compensated for his equity interest in the property, it would not insure that he was compensated for interest created by statute under state law.

> State law creates a range of equitable and statutory 'interest[s] of the debtor in the property' which are cognizable under § 548. Among the statutory interest relevant to 'reasonably equivalent value' under § 548 is the debtor's right to the surplus, if any, available after satisfying the debt underlying the foreclosing mortgage out of the proceeds of the foreclosure sale.

*Joing v. O & P Partnership*, 82 B.R. 495, 498 (D.Minn.1987) (citations omitted).

On remand, this Court was instructed to "reconsider its determination that the Debtor received the reasonable equivalent of his interest transferred at the fore-closure sale, taking into account the Debtor's statutory interest in the surplus proceeds, if any, of the sale." 82 B.R. at 499.

## II.

Upon reconsideration, the Court concludes that there were no surplus proceeds from the foreclosure sale in this case. However, the Court finds that its earlier determination as to the nature of the Debtor's interest transferred at the foreclosure sale was in error. Nevertheless, as discussed below, the result in this proceeding remains unchanged.

MINN.STAT. § 580.10 states:

> In all cases not provided for in section 580.09, if, after sale of any real estate, made as herein prescribed, there remains in the hands of the officer making the sale any surplus money, after satisfying the mortgage, with interest, taxes paid, and costs of sale, the surplus shall be paid over by such officer, on demand, to the mortgagor, his legal representatives or assigns.

The purchaser paid $12,293.30 in cash at the foreclosure sale, which amount constituted full consideration for the debt owed on a second mortgage. Additionally, the purchaser assumed the first mortgage. The purchaser's bid did not exceed the amount of the first and second mortgages, and therefore, there were no surplus proceeds remaining from the sale after satisfying the mortgages.

It is true that on November 1, 1984, when O & P sold the property to a third party for $90,000.00, it realized a profit. However, the November 1 sale was not a foreclosure sale. No mortgages or liens were foreclosed. The sale was a real estate transaction conducted in ordinary course. MINN.STAT. § 580.10 applies only to foreclosure sales.

Moreover, on November 1, 1984 the statutory right of redemption of both the Debtor and junior lienors had expired. Neither, therefore, had a legal or equitable interest in the profit realized by O & P on November 1. MINN.STAT. § 580.10 does not and was not intended to apply to resale of land previously purchased at a foreclosure sale,

particularly, where the resale occurs long after the foreclosure and expiration of any statutory right of redemption.

There is no technical term for the interest that passes to a purchaser at a foreclosure sale.[1] *Buchanan v. Reid*, 43 Minn. 172, 45 N.W. 11 (1890).

> [The interest] is anomalous—a purely statutory interest. It is personal property—a lien on real property. In many respects, the interest of the purchaser is the same as that of the mortgagee before sale, but not in all respects. It is not an estate. It is not an interest in realty, within the meaning of the statute authorizing actions to determine adverse claims, and yet it is an interest in realty to the extent that it passes by deed, and by statute, it is made subject to levy as realty.
>
> The purchaser has a lien on the premises to the amount of the purchase price, but he has something more than a mere right to receive back his purchase money and interest. He has a right to acquire absolute title to the land unless it is redeemed within the time allowed by law by one who has a right under the statute to redeem, and he cannot be deprived of this right by one who is not a lawful redemptioner.

12 Dunnell Minn.Dig.2d, *Mortgages,* § 16.02 (3rd Ed.1986).

The purchaser's lien and potential right to acquire absolute title to the property transferred in this case, was not worth significantly more than the cost of paying off and assuming respectively the first and second mortgages. The Debtor, the State of Minnesota, and the IRS all had the right to redeem the property. The property was worth $90,000.00,[2] and the redemption price was about $53,500.00. In this circumstance, the probability that at least one of the parties would redeem the property was very high. It is unlikely that the purchaser could have sold his interest in the purchased property for much more than what he paid for it.

In conclusion, the Court finds that the Debtor received at least the reasonably equivalent value for his interest transferred at the foreclosure sale, through his receipt of the statutory right of redemption; and in the protection of value of the property to the extent of junior liens through statutory redemption rights available to the lienholders.

What apparently bothers the Debtor is that O & P eventually was able to sell the property for more than it paid for it at the foreclosure sale. The Debtor sees this profit as a windfall to O & P at the Debtor's expense. In other words, the Debtor claims that the profit was an interest of the Debtor transferred at the sale. This simply is not correct.

Any increase in value to O & P over the purchase at foreclosure sale came much later. In fact, it came about as a result of complete failure of redemption, six months after the transfer. More importantly, immediately after the sale, the potential future increase in value was not dependent upon failure of the Debtor to timely exercise his redemption rights. Assuming the Debtor's failure, it was dependent upon the failure of both IRS and State of Minnesota

---

1. The Court, in a prior decision, concluded that foreclosure sale "passes all the right, title and interest in and to the mortgage premises which the mortgagor possessed at the time of the mortgage was executed, or which were subsequently acquired by him. ..." *In re Kangas*, 46 B.R. 102, 105 (Bankr.D.Minn.1985) (quoting 55 Am. Jur.2d, *Mortgages*, § 784 (1971 and Supp. 1984)). This conclusion is not correct in the State of Minnesota. Undoubtedly, the Court's law clerk slipped the quote in at the last minute, and the Judge missed it. A purchaser at a foreclosure sale does not succeed to the title of a mortgagor until the expiration of the redemption period, under Minnesota law. *See Watkins v. Hackett,* 20 Minn. 106 (GIL.92) (1873); *Fredin*

*v. Cascade Realty Co.,* 205 Minn. 256, 260 (1939). Location of title, however, has little significance during redemption, other than as evidencing who has the right to possession and right of redemption; and upon failure of redemption, title becomes absolute in the sale purchaser without the affirmative act of the debtor or anyone else. *See* MINN.STAT. § 580.12.

2. The District Court stated that this Court may reassess its conclusion that the fair-market value of the property transferred was no more than $90,000.00. The Court believes that a $90,-000.00 evaluation is accurate.

to exercise their independent redemption rights.[3]

What these observations suggest is that the profit complained of was not an interest of the Debtor transferred at the sale; and that, in fact, the profit did not represent an interest of the Debtor at all. If the profit represented the transferred interests of anyone, it was the ultimately transferred interests at expiration of redemption of IRS and State of Minnesota.[4] Section 548 is concerned with only transfers of a debtor's interest in property.

### III.

The Minnesota statutory mortgage foreclosure scheme is not easily susceptible to application of 11 U.S.C. § 548 to adjudicate foreclosures as fraudulent transfers. If the transfer, for purposes of § 548, be considered to occur at the foreclosure sale, it is ordinarily difficult to find anything of significant value transferred. The debtor "transfers" a fixed balance sheet asset (the real estate) and receives a current balance sheet asset (the statutory right of redemption). The statutory right of redemption protects both a debtor's equity and the value in the property of nonforeclosing liens. The value in the property of nonforeclosing liens is further protected by independent rights of junior lienors to redeem, and the outright preservation in foreclosure of senior nonforeclosing liens.

No evidence was offered in this case regarding the difference in value between the fixed asset immediately before the sale and the current asset immediately after the sale. It would seem that, ordinarily, there would not exist a great disparity in value solely due to the change in the balance sheet nature of the asset. Of course, the debtor continues to enjoy rights of possession, rent and profits during redemption. The greater a debtor's equity in the property, the more likely that he has the ability to, and in fact will, redeem. If a debtor has no equity, but nonforeclosing junior liens have value, then, likewise, the more value to the liens, the more likely that lienholders will redeem upon the debtor's failure. In other words, the greater the value in foreclosed property in excess of the foreclosing and senior nonforeclosing liens, ordinarily the greater will be the value of the statutory rights of redemption.

The value of the current asset after the sale (statutory right of redemption) should roughly correspond to the value of the fixed asset before the sale, less the value of the foreclosing lien. The debt representing the foreclosing lien is paid at the sale out of the property foreclosed. Therefore, the asset is reduced in value by that amount. But since the debt has been paid, the liability is removed also. Consequently, there ordinarily would be no significant net change in the ratio of assets to liabilities.

What happens when neither a debtor nor junior lienors redeem? If failure to exercise redemption can be considered a § 548 transfer, a fraudulent transfer might result. But is failure to exercise a right to redeem a transfer? If "A" has an option to purchase a share of "X" stock on or before May 31, 1988 from "B" at $100.00, and it is currently trading at $200.00 a share, the share's value to "B" on December 31, 1987, is not $200.00. Its value to "B" is probably much closer to $100.00. But if "A" fails to timely exercise the

---

**3.** MINN.STAT. § 580.24 provides:

If no such redemption be made by the mortgagor ... the senior creditor having a lien, legal or equitable, upon the mortgaged premises, ... may redeem within five days after the expiration of the redemption period specified in § 580.23; and each subsequent creditor having a lien in succession, according to priority of liens, within five days after the time allowed the prior lienholder respectively, may redeem by paying the amount aforesaid and all liens prior to the lienholder's own held by the person from whom redemption is made; provided that no creditor shall be entitled to redeem unless within the period allowed for redemption the creditor filed for record notice of intention to redeem with the county recorder or registrar of titles of each county where the mortgage is recorded.

**4.** This Court in its Order of June 26, 1986, denied Plaintiff's motion to amend the complaint to allege that the fraudulent transfer occurred at expiration of redemption. The case was pleaded and tried on the theory that the transfer occurred at the sale.

option, the share's value to "B" suddenly becomes market value, or $200.00 assuming market value remains constant through June 1, 1988. Could it be said that by failing to exercise the option "A" transferred the value of his option to "B"? If "A" later files bankruptcy, would "B" be subject to a fraudulent transfer action pursuant to § 548 regarding the $100.00 increase in value realized by "B" as a result of "A"'s failure to exercise the option to purchase the stock? Is the expiration of redemption any different? The increase in value to property due to the lapse of an option, or to the expiration of redemption, probably does not constitute a transfer within the meaning of § 548.

But if expiration of redemption can constitute a § 548 transfer, then, in the absence of equity of a debtor, it would seem that the disputed value transferred represents the interests of junior lienholders upon their independent failure to redeem after the debtor's right to redeem has expired and at a time when he no longer has any connection with the property. After all, under such circumstances, it is the failure of the lienholders to exercise their rights that gives enhanced value to property in the hands of the sale purchaser; just as the exercise of those rights would deprive the purchaser of that value.[5]

The Debtor's underlying premise seems to be that: there can be no free money to anyone but the Debtor or the Debtor's estate; the profit ultimately received by O & P is free money; as between the Debtor and O & P, the Debtor should have it. Section 548 addresses transfers of a debtor's interest in property. It is not concerned with the transfer of other interests in property; nor is it concerned with profits derived by a transferee otherwise than from interests of the Debtor. The fact that one creditor might profit in a transaction at the expense of another creditor does not, by itself, give rise to a remedy under § 548 even though the debtor may be incidentally affected by the transaction.

It seems that absent some unique or unusual circumstance, a finding of fraudulent conveyance under § 548 regarding a mortgage foreclosure pursuant to the Minnesota statutory mortgage foreclosure scheme would require a judicial remolding of § 548. In this Court's view, that would be inappropriate and unwise.

ACCORDINGLY, IT IS HEREBY ORDERED: the mortgage foreclosure sale to Defendant on November 10, 1983, was a transfer for which the Debtor received a reasonably equivalent value, and is, therefore, a transaction not avoidable under 11 U.S.C. § 548.

---

5. What would be the affect of an actual redemption by one of the junior lienors? For instance, if IRS had redeemed, but Minnesota had not, would IRS be subject to a fraudulent conveyance action by the Debtor based on its realization of equity due to failure of Minnesota to redeem? Would Minnesota be subject to such an action by the Debtor if it redeemed and IRS didn't? All right of the Debtor regarding the property would have been finally forfeited before either of these lienholders could have redeemed. *See* Footnote No. 2.