**In re CONSTITUTIONAL TRUST # 2–562, Debtor.**

**Bankruptcy No. 4–89–4891.**

United States Bankruptcy Court, D. Minnesota.

May 18, 1990.

Andrew Schmid, Minneapolis, Minn., for U.S. Trustee.

Arthur Mack, Minneapolis, Minn., for debtor.

Tracy A. Anagnost, Tax Div., U.S. Dept. of Justice, Washington, D.C., Michael A. Urbanos, Office of Chief Counsel, I.R.S., St. Paul, Minn., for I.R.S.

**ORDER OF DISMISSAL**

ROBERT J. KRESSEL, Chief Judge.

This case came on for hearing on the United States Trustee's motion to dismiss this case or convert it to a case under chapter 7 pursuant to 11 U.S.C. § 1112(b). Andrew J. Schmid appeared for the United

States Trustee. Arthur Mack appeared for the debtor. Tracy A. Anagnost, Trial Attorney, Tax Division, Department of Justice, and Michael Urbanos, Special Assistant United States Attorney, appeared for the United States. This court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 and Local Rule 103(b). This is a core proceeding. Based on the memoranda and arguments of counsel, and the file in this case, I make the following memorandum order.

## FACTUAL BACKGROUND

The debtor is a party to a series of bizarre double trust arrangements involving Constitutional Trust # 1–562 and several other entities. According to the terms of the trust document, Constitutional Trust # 1–562 was created on February 14, 1977 as an "indefinitely renewable, open-ended, irrevocable, standard trust." The parties to Constitutional Trust # 1–562 are the "Creator," Transinvest Corporation, and the Trustee, International Dynamics, Inc., both chartered in the Republic of Panama. The sole legal beneficiary of Constitutional Trust # 1–562 is the IDI Credit Union, a non-profit, off-shore double trust. Constitutional Trust # 1–562 was formed under the contract clause of the Constitution of the Republic of Panama, and not under Panamanian trust laws.

The trust document creating Constitutional Trust # 1–562 contains a number of nonsensical and seemingly unrelated clauses concerning so-called Beneficial Interest Certificates, Privileged Recipient Interest, and Equity Credit Accumulation. The trust document provides that 10,000,000 Beneficial Interest Certificates were issued for equal distribution among 100,000 separate Trusts # 1. An undetermined lessee has the sole right to appoint Privileged Recipients who may request any of certain tax-free services. It is unclear from the trust document who is providing these tax-free services. As to ownership, the trust document indicates that the trust owns all assets, but no one owns the trusts. The IDI Credit Union owns all "equity credit," but no one owns the IDI Credit Union. An unrestricted amount of equity credit may be accumulated in the IDI Credit Union and used as collateral for any and all discretionary tax-free services. Once again, there is no indication as to who will provide the discretionary tax-free services. I have no idea what equity credit is or how it is acquired.[1]

The debtor is a so-called "revocable domestic trust" established on November 2, 1979 "to hold title in trust property and protect and conserve such property until its sale, liquidation or transfer." The parties to the debtor are the "Creator," Constitutional Trust # 1–562, as represented by International Dynamics, Inc., its trustee, and the Trustees, Dale and Rhonda Korkowski. The trust document expressly states it is not to be deemed "to be, or create, or evidence the existence of a corporation, de facto or de jure, or a Massachusetts Trust, or any other type of business trust ..."[2]

---

1. All of this brings to mind the immortal words of Lewis Carroll, in his poem, "Jabberwocky":

'Twas brillig, and the slithy toves
   Did gyre and gimble in the wabe:
All mimsy were the borogoves,
   And the mome raths outgrabe.
"Beware the Jabberwock, my son!
   The jaws that bite, the claws that catch!
Beware the Jubjub bird, and shun
   The frumious Bandersnatch!"
He took his vorpal sword in hand;
   Long time the manxome foe he sought—
So rested he by the Tumtum tree,
   And stood awhile in thought.
And, as in uffish thought he stood,
   The Jabberwock, with eyes of flame,
Came whiffling through the tulgey wood,
   And burbled as it came!

One, Two! One, two! And through and through
   The vorpal blade went snicker-snack!
He left it dead, and with its head
   He went galumphing back.
"And hast thou slain the Jabberwock?
   Come to my arms, my beamish boy!
O frabjous day! Callooh, Callay!"
   He chortled in his joy.
'Twas brillig, and the slithy toves
   Did gyre and gimble in the wabe:
All mimsy were the borogoves,
   And the mome raths outgrabe.
Carroll, *Through the Looking Glass* (1872).

2. This is inconsistent with the assertion in the disclosure statement that the debtor is a "common law trust," and the assertion in the debtor's response to the United States Trustee's motion

The sole legal beneficiary of the debtor is Constitutional Trust # 1–562.[3] The trust is formed "under the common law of contracts and is protected by Article I, Sec. 10, Para. 1 of the Constitution of the U.S. and under Amendment 14, Clause 1." The trust document further indicates that the debtor is not formed under the trust laws of any particular state. The trust document goes on to provide that the trust and its operations "are protected by the Fifth Amendment to the Constitution of the U.S. and by the Privacy Act of 1974, 5 U.S.C. 552a."

The debtor had no assets until October 8, 1982, when Dale and Rhonda Korkowski transferred their home at 9351 N.E. Ochoa in Elk River, Minnesota, to the debtor by a quitclaim deed, subject to preexisting mortgage obligations. The Korkowskis claim to have occupied the home thereafter as tenants, paying as rent an amount equal to the mortgage payment, insurance and taxes. However, the record contains no evidence of a lease agreement. It is more likely the Korkowskis simply paid the mortgage, taxes and insurance directly.

In 1985, Dale and Rhonda Korkowski acquired a second common law trust, D and R Machine. D and R Machine is an independent contractor of machine parts. D and R remodelled the garage on the Ochoa property into a machine shop and leased that space from the debtor. D and R's lease payments for the machine shop equal the monthly mortgage payment.[4] D and R also pays real estate taxes and maintenance costs on the property.[5]

On July 14, 1989, the IRS filed nominee liens against the property of the debtor, as nominee of Dale and Rhonda Korkowski, based on the Korkowski's unpaid personal income taxes of $33,247.06. On September 8, 1990, the IRS seized the Ochoa property pursuant to the nominee liens. The property was scheduled to be sold at public auction on October 11, 1989, but the sale was suspended due to the filing of this chapter 11 case.

On October 11, 1989, the debtor filed its chapter 11 petition. The petition identifies the debtor as a trust, and lists Dale and Rhonda Korkowski as trustees. The petition indicates that the debtor is engaged in the business of leasing its real estate to a commercial business. The real estate consists of a dwelling, machine shop and lot located at 9351 N.E. Ochoa in Elk River, Minnesota, and has a market value of $80,000.00. The schedules list three secured creditors, Twin City Federal, which holds a $9,000.00 first mortgage on the Ochoa property, First Minnesota Savings Bank,

that the debtor is a "lawfully organized, irrevocable business trust." *See* note 11.

**3.** This, too, is inconsistent with the debtor's assertion in the disclosure statement that the Korkowskis' four children are the trust beneficiaries.

**4.** At some point, D and R Machine began making rent payments and the Korkowskis ceased doing so. Mr. Korkowski testified at the § 341(a) meeting that he does not pay rent to the debtor for use of the residence on the Ochoa property.

**5.** The Korkowskis are by no means newcomers to the trust scene. In 1979, Mr. Korkowski executed an "entrusted personal services contract" in an attempt to sell his lifetime services to a trust. Thereafter, he either endorsed his paychecks directly to the trust or deposited those checks in his bank account and wrote checks to the trust in the amount of his salary. He then received back from an entity called IDI Credit Union (I assume this is the same entity which is the sole legal beneficiary of Constitutional Trust # 1–562) an amount equal to approximately 90 percent of his paychecks. He then claimed a tax deduction for "factors discount on accounts receivable-resold."

The Commissioner of Revenue determined a tax deficiency in the amount of $2,965. In deciding in favor of the Commissioner, the Tax Court indicated that Mr. Korkowski's purported sale of his lifetime services to the trust was "a contrived and artificial mechanism for assigning [his] income and receiving it back again." *Korkowski v. Commissioner,* 48 T.C.M. (CCH) 676, 677 (1984). The Tax Court also noted that the Korkowskis had litigated the identical issue before the Tax Court in September 1983. In that case, the court sustained the Commissioner's determination as to the tax deficiencies, and noted that the Korkowskis' position was "a flagrant attempt to assign wage income." *Id.* at 677. I assume it was the case litigated before the Tax Court in 1983 that was affirmed without published opinion by the Eighth Circuit. *See Korkowski v. Commissioner,* 738 F.2d 445 (8th Cir.), *cert. denied,* 469 U.S. 937, 105 S.Ct. 340, 83 L.Ed.2d 275 (1984).

which holds a $6,500.00 second mortgage on the Ochoa property, and the Internal Revenue Service, which holds a nominee lien on the Ochoa property based on a claim of between $33,000.00 and $63,000.00. The schedules list the Minnesota Department of Revenue as the debtor's only unsecured nonpriority creditor.[6] The amount of the Department of Revenue's claim is listed as unknown.

On February 8, 1990, the debtor filed a disclosure statement and plan. The plan provides that D and R Machine will "reorganize" as a Minnesota Business Trust pursuant to Minnesota Statutes chapter 318, and will merge with the debtor. The plan proposes to transfer the Ochoa property to the "reorganized" D and R Machine business trust in exchange for D and R's assumption of all liabilities of the debtor. The reorganized entity will make all payments contemplated under the plan, and pay all creditors one hundred percent of their "lawful claims" against the debtor.

On March 29, 1990, the United States Trustee filed a motion to dismiss or convert this case under § 1112(b), based on his assertion that the debtor is not eligible to be a debtor under chapter 11. The United States Trustee requests conversion rather than dismissal, to enable a trustee to investigate possible insider transactions, and to liquidate the assets of the debtor to satisfy claims of creditors.[7] The United States, on behalf of the Internal Revenue Service, filed a memorandum in support of the United States Trustee's motion.[8] The IRS supports dismissal on grounds that the petition was filed in bad faith,[9] the debtor is not

engaged in any legal business activity, and the petition was filed for the sole purpose of frustrating or delaying the efforts of the IRS to enforce its rights against the Ochoa property.

### DISCUSSION

Bankruptcy Code § 1112(b) provides in part:

> on request of a party in interest or the United States trustee, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case, whichever is in the best interest of the creditors and the estate, for cause
> . . .

11 U.S.C. § 1112(b).

The United States Trustee asserts in both his motion to dismiss or convert this case, and his objections to the proposed disclosure statement, that this debtor is ineligible for chapter 11 relief. He alleges that the debtor is not a business trust under Minnesota Statutes chapter 318. He further asserts that the debtor is not engaged in business, as required for chapter 11 eligibility in this circuit. *See Wamsganz v. Boatmen's Bank of De Soto*, 804 F.2d 503 (8th Cir.1986).

### I. Business Trust

■ Bankruptcy Code § 301 provides that "[a] voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter *by an entity that may be a debtor under such chapter*." 11 U.S.C. § 301 (emphasis added). Section 109(d) provides that "[o]nly a person that may be

---

6. The plan of reorganization treats the "unsecured, nonpriority claims" of the Minnesota Department of Revenue as priority claims under 11 U.S.C. § 507(a)(7)(A) "because the debtor did not file timely returns."

7. The petition lists total assets of $80,000.00 and total liabilities of $79,900.00.

8. The IRS filed its memorandum on April 30, 1990, two days before the May 2, 1990 hearing on the United States Trustee's motion to dismiss or convert. On May 2, 1990, the debtor filed an ex parte motion to strike the IRS's memorandum as untimely. Contrary to the debtor's understanding, neither the Bankruptcy Rules nor the Local Rules impose a deadline for filing

a memorandum in support of a motion to dismiss or convert. However, I granted the debtor until May 9, 1990 to submit a written response to the arguments raised in the IRS's memorandum. The debtor's response was filed on May 10, 1990.

9. This order does not address the issue of bad faith. Neither the United States Trustee's motion nor his memorandum mentions bad faith as a basis for dismissal or conversion of this case. The other grounds raised by the trustee—and echoed by the IRS—provide ample bases for dismissal.

a debtor under chapter 7 of this title ... may be a debtor under chapter 11 of this title." 11 U.S.C. § 109(d). Section 109(b) provides:

> [a] person may be a debtor under chapter 7 of this title only if such person is not—
>
> (1) a railroad;
>
> (2) a domestic insurance company, bank, savings bank, cooperative bank, savings and loan association, building and loan association, homestead association, credit union, or industrial bank or similar institution ...; or
>
> (3) a foreign insurance company, bank, savings bank, cooperative bank, savings and loan association, building and loan association, homestead association, or credit union, engaged in such business in the United States.

11 U.S.C. § 109(b). Section 101(35) defines "person" to include an "individual, partnership, and corporation ..." 11 U.S.C. § 101(35). Section 101(8)(A)(v) defines "corporation" to include business trusts.[10] 11 U.S.C. § 101(8)(A)(v). Chapter 318 of the Minnesota Statutes governs business trusts in this state.

To summarize: in order to be eligible for chapter 11, the debtor must be eligible for chapter 7. To be eligible for chapter 7, the debtor must be a "person." Since the debtor is clearly not an individual or a partnership, to be a person the debtor must be a corporation. Since it is none of the other designated entities, to be a corporation, the debtor must be a business trust.

In its response to the United States Trustee's motion, the debtor argues that it is a "lawfully organized, irrevocable business trust,"[11] and hence, is eligible for chapter 11 relief under Bankruptcy Code § 101(8)(A)(v). The debtor's argument fails for several reasons. First, the trust, by its own terms, is not a business trust. The trust document provides, in relevant part, that "[t]his agreement shall not be deemed to be, or create, or evidence the existence of a corporation, de facto or de jure, or a Massachusetts Trust, *or any other type of business trust ...*" (emphasis added).

■ The debtor also fails to meet the requirements of a business trust under Minnesota law.[12] Minnesota Statutes § 318.01 provides:

---

**10.** "It is clear that ... except for a 'business trust' a trust is not a 'person' eligible for relief." *In re Medallion Realty Trust,* 103 B.R. 8, 10 (Bktcy.D.Mass.1989). Both the House and Senate Committee Reports state: "The definition [of 'person'] does not include an estate or trust ..." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 313 (1977), S.Rep.No. 95–989, 95th Cong., 2d Sess. 25 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5810, 6270.

**11.** The debtor suffers from an apparent identity crisis: it is seemingly unable to decide exactly what type of legal entity it is. The petition identifies the debtor as a "trust." The disclosure statement identifies the debtor as a "common law trust." Black's Law Dictionary defines a common law trust as "[a] business trust which has certain characteristics in common with corporations and in which trustees hold the property and manage the business and the shareholders are the trust beneficiaries or cestui que trust; sometimes known as a Massachusetts trust." Black's Law Dictionary 251 (5th ed. 1979). However, the trust document expressly states that the debtor is neither a Massachusetts trust nor a business trust and was not formed under the trust laws of any state. Therefore, the debtor's confusion is not entirely unfounded. The trust document clearly indicates what type of entity the debtor *is not,* but is hardly enlighten-

ing as to what type of entity the debtor *is.* Assuming the debtor spent any time reviewing the trust document, it could not help but feel much as Alice did upon reading "Jabberwocky":

> "It seems very pretty," she said when she had finished it, "but it's *rather* hard to understand!" ... "Somehow it seems to fill my head with ideas—only I don't exactly know what they are!"

Carroll, *Through the Looking Glass* (1872) (emphasis in original).

**12.** In interpreting the phrase "business trust" in the context of eligibility for bankruptcy relief, courts have fashioned a variety of different definitions. Since business trusts in Minnesota are governed by statute, I must apply the definition of business trust in Minnesota Statutes § 318.01. However, it is interesting to note that even if the statute did not exist, the debtor would not fit within any of the following definitions of "business trust" devised by other courts:

In *Mosby v. Boatmen's Bank of St. Louis County (In re Mosby),* 61 B.R. 636, 638 (E.D.Mo.1985), *aff'd,* 791 F.2d 628 (8th Cir.1986), the court stated:

> It is well established that a business trust is something more than simply a trust that carries on a business. *Hecht v. Malley,* 265 U.S. 144, 44 S.Ct. 462, 68 L.Ed. 949 (1924).

*Two or more natural persons,* wheth-· er residents of this state or not, *or two or more corporations* which are now organized or may hereafter be organized, which includes all domestic corporations, national banks and only those foreign corporations which hold a certificate of authority to transact business in this state, may organize and associate themselves together *for the purpose of transacting business* in this state under what is commonly designated or known as a "declaration of trust" [13] or "business trust" ... [emphasis added].

The statute requires that a business trust be comprised of two or more natural persons or two or more corporations. In this case, the parties to Constitutional Trust # 2–562 are Constitutional Trust # 1–562 and the trustees, Dale and Rhonda Korkowski. Because Constitutional Trust # 1–562 is neither a natural person nor a corporation, the debtor fails to meet the requirements of Minnesota Statutes § 318.01. Moreover, Constitutional Trust # 1–562 and the Korkowskis are not associating themselves within the meaning of the statute.

■ There is no evidence that the debtor was created for purposes of transacting business, as required by Minnesota Statute § 318.01. Rather, the trust, by its own terms, was established "to hold title in trust property and protect and conserve such property until its sale, liquidation, or transfer." Trusts which have as their principal purpose the preservation of property held for the benefit of beneficiaries have never been recognized as business trusts. *In re Ralph Faber Trust,* 113 B.R. 599 (Bktcy.D.N.D.1990); *In re Cahill,* 15 B.R. 639 (Bktcy.E.D.Pa.1981). In addition, the debtor has failed to offer any evidence that it is actually transacting business. The debtor makes no profit, since the "rent" paid by D and R Machine is equal to the underlying mortgage payment, taxes and insurance. While the absence of profit is not necessarily an indication that the debtor is not transacting business, the debtor here serves merely as a tax shelter for the Korkowskis' property and a conduit through which D and R Machine pays the mortgage, taxes and insurance on that property. To the extent the debtor is transacting business, that business appears to be the evasion of the Korkowskis' taxes. Hence, the debtor fails to meet the statutory requirements of a business trust under Minnesota law. Accordingly, the debt-

---

The distinguishing characteristics of a business trust include:
1. a trust created and maintained for a business purpose;
2. title to property held by trustees;
3. centralized management;
4. continuity uninterrupted by death among beneficial owners;
5. transferability of interests; and
6. limited liability.

*Morrissey v. Commissioner,* 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263 (1935). Essentially, Congress included business trusts in the Bankruptcy Code definition of a corporation as a person because of their similarity to corporations. *See Associated Cemetery Management Inc. v. Barnes,* 268 F.2d 97 (8th Cir.1959). In distinguishing between a business trust and a nonbusiness trust, the court in *In re Treasure Island Land Trust,* 2 B.R. 332, 334 (Bktcy.M.D. Fla.1980) stated that "business trusts are created for the purpose of carrying on some kind of business or commercial activity for profit; the object of a nonbusiness trust is to protect and preserve the trust res." Similarly, the court in

*Merrill v. Allen (In re Universal Clearing House Co.),* 60 B.R. 985, 991 (D.Utah 1986) held that if the overt purpose of the trust is to protect the trust res, it is ineligible for bankruptcy protection.

**13.** Minnesota Statutes § 318.02, subd. 1, provides:

The term "declaration of trust" as used in this section means the declaration of trust, business trust instrument, trust indenture, contract of custodianship, or other instrument pursuant to which such association is organized. Every such association organized after April 20, 1961, for the purpose of transacting business in this state shall, prior to transacting any business in this state, file in the office of the secretary of state a true and correct copy of the "declaration of trust" under which the association proposes to conduct its business ...

There is no evidence that the debtor filed a copy of its "declaration of trust" with the secretary of state, so as to be properly registered as a business trust in this state.

or is not eligible to be a bankruptcy debtor.[14]

## II. *Wamsganz*

■ The debtor is also ineligible for chapter 11 relief under the Eighth Circuit's holding in *Wamsganz v. Boatmen's Bank of De Soto*, 804 F.2d 503 (8th Cir.1986). In *Wamsganz*, the Eighth Circuit held that persons not engaged in business may not seek relief under chapter 11 of the Bankruptcy Code. Therefore, even if the debtor was otherwise eligible for chapter 11 relief as a business trust or some other legal entity, it is not engaged in business, and hence, is ineligible for chapter 11 under *Wamsganz.*

Notwithstanding the holding in *Wamsganz* and the absence of evidence that the debtor is engaged in business,[15] the debtor argues that "special circumstances" such as those present in *In re Moog*, 774 F.2d 1073 (11th Cir.1985) entitle it to relief under chapter 11. In *Moog*, the Eleventh Circuit allowed a consumer debtor relief under chapter 11, since she did not qualify for chapter 13 relief and chapter 7 relief meant losing her home. Similarly, the debtor argues that "special circumstances," including the lack of other available bankruptcy relief and the debtor's substantial equity in the real estate asset, entitle it to chapter 11 relief in this ·case. However, the Eighth Circuit in *Wamsganz* unequivocally stated that "persons who are not engaged in business may not seek relief under chapter 11 of the Bankruptcy Code."

*Wamsganz*, 804 F.2d at 505. The Eighth Circuit also stated that "[e]ven if we were to adopt an approach similar to *Moog*, there are no special circumstances present here that would foreclose other bankruptcy relief." *Id.* This statement is dictum. It in no way manifests an intent on the part of the Eighth Circuit to adopt the *Moog* approach. Therefore, even if special circumstances such as those in *Moog* exist here, I am compelled to follow the holding in *Wamsganz*. The debtor is not engaged in business, and hence, is not entitled to chapter 11 relief.

The United States Trustee requests that this case be converted to a case under chapter 7 rather than dismissed. While I agree that this case might benefit from the scrutiny of a trustee, the debtor is no more eligible for chapter 7 relief than it is for chapter 11 relief. Accordingly, the case will be dismissed.

THEREFORE, IT IS ORDERED: The United States Trustee's Motion to Dismiss under § 1112(b) is granted.

---

**14.** This case brings to mind yet another old adage: "if it walks like a duck, quacks like a duck and looks like a duck, it has got to be a duck." *The Ophir Trust,* 112 B.R. 956 (Bktcy.E. D.Wisc. 1990). However, merely calling something a duck does not make it a duck. Here, as in *Ophir Trust,* the debtor may look something like a duck, but it neither walks nor quacks like a duck. *See, also, Grubel, et al. v. Sports Marketing, Inc. (In re Sports Marketing, Inc.),* 116 B.R. 685, 686, (Bktcy.D.Minn.1989) ("Pouring gravy on cotton candy does not make it mashed potatoes ...").

**15.** In the disclosure statement, the debtor concedes that it is not engaged in business. The disclosure statement provides that "Debtor believes· that by merging with D and R Machine ... it will meet the requirement of being a debtor engaged in business." However, a particular debtor's eligibility for relief under chapter 11 is determined at the commencement of the case. The debtor may not attempt to "cure" its ineligibility by proposing to merge with a purportedly eligible nondebtor party as part of its plan of reorganization.