**In re MINNESOTA ALPHA FOUNDATION, Debtor.**

**Bankruptcy No. 3–90–2906.**

United States Bankruptcy Court,
D. Minnesota,
Third Division.

Dec. 4, 1990.

---

Charles E. Spring, Richfield, Minn., for debtor.

Michael R. Fadlovich, Office of U.S. Trustee, Minneapolis, Minn., U.S. Trustee.

### ORDER RE: MOTION OF U.S. TRUSTEE TO DISMISS OR CONVERT

GREGORY F. KISHEL, Bankruptcy Judge.

This Chapter 11 case came on before the Court on November 20, 1990, for hearing on the motion of the U.S. Trustee for conversion or dismissal. The U.S. Trustee appeared by his attorney, Michael R. Fadlovich. Charles E. Spring appeared on behalf of Debtor.[1] Upon the moving and responsive documents, arguments of counsel, and all of the other files, records, and proceedings in this case, the Court makes the following order.

Debtor is a Minnesota non-profit corporation which filed a voluntary petition under Chapter 11 on June 29, 1990. On its Statement of Financial Affairs, it alleged its business as "[m]anagement of fraternity alumni assets." Its major function was to hold fee title to two different parcels of real estate on the University of Minnesota–Twin Cities campus. Fraternity houses are located on these properties, which Debtor rented out to local chapters of national college fraternities.

Between September, 1987, and August, 1990, Debtor granted mortgages against these properties to several financial institutions.[2] One of the properties was sold at a sheriff's foreclosure sale on December 29, 1989, at the instance of Liberty National Bank, a mortgagee. Riverside Bank, which held a mortgage against the other property, moved for relief from stay in this case in October, 1990. Debtor did not defend the motion, the Court granted it, and Riverside Bank has commenced foreclosure proceedings. Debtor did not redeem the first property from the sheriff's sale. Apparently it does not intend to redeem the second property, or is unable to. At present, pending completion of the foreclosure, it is collecting rents from the tenant of the second property. Other than as noted, Debtor has no other significant assets[3] or discernible business activity.

---

1. Spring held himself out as successor counsel, but Debtor had not yet submitted an application for approval of his employment to the U.S. Trustee for review and recommendation and to the Court for action, as required by LOC.R. BANKR.P. (D.Minn.) 122(h) and 117.

2. These and other secured debts dominated Debtor's debt structure. Outside of several contested claims in favor of former members of its board of trustees, and a modicum of debt to trade suppliers, Debtor's major scheduled unsecured debt is one for alumni club dues to the Phi Delta Theta national fraternity.

3. Debtor scheduled a nominal amount of bank deposits, and furnishings, appliances, and communications equipment on-site at its houses, as its only personal property. These items would not have significant liquidation value.

The U.S. Trustee has moved for conversion or dismissal of this case pursuant to 11 U.S.C. § 1112(b)(1)–(3).[4] He, of course, has the burden of proof as to all elements of the statutory provisions on which he relies. *In re Economy Cab & Tool Co., Inc.*, 44 B.R. 721, 724 (Bankr.D. Minn.1984). At a stage as early in the case as at bar, the movant for conversion or dismissal under § 1112(b)(1) must show "that there is no more than a 'hopeless and unrealistic prospect' of rehabilitation." *Id.* (citing *In re Steak Loft of Oakdale, Inc.*, 10 B.R. 182 (Bankr.E.D.N.Y.1981)). To do this, the U.S. Trustee notes that Debtor is not currently engaged in any business or economic activity or will shortly have to cease all such activity; as a result, he argues, Chapter 11 relief is not available to Debtor. He relies upon *Wamsganz v. Boatmen's Bank of De Soto*, 804 F.2d 503 (8th Cir.1986) as his primary authority.

In response to the U.S. Trustee's motion, and only shortly before the hearing on it, Debtor took three actions: it discharged its counsel of record for this case; it retained new counsel; and, through its new counsel, it prepared and filed a complaint in adversary proceedings captioned *Minnesota Alpha Foundation v. Newfrat Realty Group, et al.*, ADV 3–90–290. The named defendants in this adversary proceeding are individuals, corporations, financial institutions, or other entities which held or asserted mortgages or liens against Debtor's two properties, or which were involved with the creation of those encumbrances. Included among the enumeration of Defendants is the phrase "former Trustees of Debtor," with a specific reference to three named individuals.

The complaint includes ten counts, each of which frames a different prayer for substantive relief. Via these counts, Debtor seeks to avoid the attachment and enforcement of various mortgages against its properties as fraudulent transfers under 11 U.S.C. § 548 and/or the Minnesota enactment of the Uniform Fraudulent Transfer Act. It also seeks to avoid the December, 1989 sheriff's sale as the alleged fruit of legally-defective foreclosure proceedings; to avoid Debtor's 1989 purchase of one of the properties as a fraudulent transfer; to avoid Debtor's post-petition grant of a mortgage "pursuant to 11 U.S.C. § 362"[5]; and to avoid the granting of the various mortgages as transactions which exceeded the scope of the authority of its board of trustees.[6] In addition to the various forms of avoidance relief, Debtor seeks an award of damages against the individual members of its board, for the losses which allegedly resulted from their actions in exceeding their authority. As of the date of the hearing on the U.S. Trustee's motion, Debtor's counsel had not served the summons and complaint in this adversary proceeding on any of the named defendants. Counsel for the U.S. Trustee had not received a copy of it either.

In prosecuting his motion, the U.S. Trustee primarily relies on *Wamsganz*. In that case, the Eighth Circuit noted that

[t]he legislative history of the Bankruptcy Code, taken as a whole, shows that Congress meant for chapter 11 to be available to businesses and persons en-

---

**4.** In pertinent part, these provisions say:
Except as provided in subsection (c) of this section, on request of ... the United States trustee, and after notice and a hearing, the court may convert a case under [Chapter 11] to one under chapter 7 ... or may dismiss a case under [Chapter 11] ... whichever is in the best interest of creditors and the estate, for cause, including—
 (1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;
 (2) inability to effectuate a plan;
 (3) unreasonable delay by the debtor that is prejudicial to creditors;

**5.** For some reason, Debtor does not refer to 11 U.S.C. § 549 in this count. Section 549 is the more direct and appropriate authority for avoidance of an unauthorized post-petition transfer of property of the estate, which seems to be what Debtor is really complaining about.

**6.** Debtor alleges that the board granted the mortgages without obtaining the approval of Debtor's members; this, it now alleges, violated provisions of the Minnesota Nonprofit Corporation Act, specifically former MINN.STAT. § 317.26.

gaged in business, and *not to consumer debtors,*

804 F.2d at 505 (emphasis added). In affirming the Bankruptcy Court's dismissal of the Chapter 11 case of the consumer debtors involved, it concluded that "persons who are not engaged in business may not seek relief under chapter 11 of the Bankruptcy Code." *Id.* Since *Wamsganz,* the Eighth Circuit has reaffirmed its holding by applying it in an unequivocal, summary fashion in *In re Toibb,* 902 F.2d 14 (8th Cir.1990) (petition for certiorari pending). *See also In re Constitutional Trust # 2–562,* 114 B.R. 627 (Bankr.D.Minn.1990) ("revocable domestic trust" formed "under the common law of contracts" and purporting to be "protected by" U.S. Constitution, whose only function is to hold title to homestead real estate for ultimate benefit of certain individuals, is not "engaged in business" within the meaning of *Wamsganz* ).

Debtor counters by arguing that it intends to use its pending adversary proceeding to regain possession of its two properties and to recover losses attributable to the actions of its board.[7] It then would use the fruits of these efforts to reorganize, by proposing a plan which would restructure its mortgage debt to the extent that that debt survived the litigation of the adversary proceeding, or was revived by it.

At this point, however, Debtor acknowledges that its prior business is moribund; absent some sort of grant of extraordinary relief against the mortgagee currently foreclosing against the second property, Debtor's remaining interest in that parcel will be extinguished in the coming months, and the inflow of cash from the rental of that property will cease. At that point, Debtor will truly become no more than an instrumentality for the litigation of legal causes of action. Counsel states that the "funds for proceeding with" this litigation "have been committed by members of the organization," apparently referring to ar-

rangements with third parties for the payment of his retainer and/or ongoing compensation. This statement, evidencing Debtor's lack of significant current resources, further acknowledges the tenuousness of Debtor's claim to be currently "engaged in business."

Strictly speaking, *Wamsganz* stands for no more than the proposition that an individual consumer debtor cannot obtain Chapter 11 relief.[8] The Eighth Circuit's holding only affirmed the Bankruptcy Court's ruling, as set forth in *In re Wamsganz,* 54 B.R. 759, 763 (Bankr.E.D.Mo. 1985), that "[t]o qualify for relief under Chapter 11, a person must be a business enterprise or operate a business." The facts in *Wamsganz* were markedly different from those at bar; here, the debtor has been a functioning business in the recent past, it is a corporate entity, and thus it has a perfectly colorable claim to being a "business enterprise" within the purview of the Bankruptcy Court *Wamsganz* opinion. Rather than invoking Chapter 11 to restructure personal debts, as the debtors in *Wamsganz* proposed to do, Debtor seeks to use the enhanced powers of a debtor-in-possession under Chapter 11 to "jump start" its enterprise, and/or to engage in a self-directed liquidation of tangible assets and causes of action.

 These differences are so marked as to distinguish *Wamsganz* from the present case on its facts, and to deprive it of direct precedential value. A debtor's eligibility for relief under Chapter 11, and the "availability" of Chapter 11 relief to a particular debtor, are determined by the facts at the commencement of the case. *In re Constitutional Trust No. 2–562,* 114 B.R. at 633 n. 15. In *Wamsganz,* the debtors' non-engagement in business was a constant, from the filing of their Chapter 11 petition to the Bankruptcy Court's disposition of the motion to convert or dismiss. Here, Debtor *was* "engaged in business" as of the com-

---

7. Debtor's counsel states that his client has insurance coverage for such losses under an errors-and-omissions policy of some sort.

8. One is reluctant to use the phrase "is not eligible for Chapter 11 relief." 11 U.S.C.

§ 109(d) and, by incorporation, § 109(b) govern statutory eligibility for Chapter 11 relief, and they say nothing about engagement in business as a prerequisite.

mencement of its case, and satisfied the judicially-enunciated requirement of "engagement in business" at the time when that requirement was to be imposed pursuant to basic principles of bankruptcy law.

However, there is no question but that Debtor and its estate have suffered substantial losses in assets and value since the commencement of this case. The rights of redemption as to the first property, even as extended and augmented by 11 U.S.C. § 108(b),[9] have now expired; the income stream which Debtor received from that property after the sheriff's sale, if any, is now lost. By now, Debtor has lost its pre-foreclosure property rights in the second property by the process of sheriff's sale, or it will lose them shortly; the current income stream from that property also will be lost to the estate.

As a threshold matter, these facts raise the applicability of 11 U.S.C. § 1112(b)(1). The existence of a substantial and continuing diminution of the estate is uncontroverted. The only real question is the "absence of a reasonable likelihood of rehabilitation." " '[R]ehabilitation' ... means something more than 'reorganization' ... rehabilitation means 'to put back into good condition; to re-establish on a firm sound basis.' [citations omitted]" *In re Economy Cab & Tool Co.*, 44 B.R. at 725 n. 2. Under this definition, "rehabilitation" contemplates the successful maintenance or re-establishment of the debtor's business operations, subject to internal reorganization as to the nature, scope, and intensity of particular forms of economic activity.

On this record, one simply cannot conclude that rehabilitation of this Debtor and its operations is reasonably likely. The resumption of Debtor's prior business would require the recovery of its two properties—an event which is possible only after long and complex litigation, if at all. To be sure, in this circuit, fraudulent-transfer law is nominally available to a trustee or debtor in possession in bankruptcy which seeks to attack the foreclosure of a real estate mortgage. *See In re Hulm*, 738 F.2d 323 (8th Cir.1984). However, the development of the caselaw since *Hulm* underscores the substantial legal complexities, and the manifest uncertainty of success, in any such undertaking. *See, e.g., In re Joing*, 61 B.R. 980 (Bankr.D.Minn.1986), *remanded, Joing v. O & P Partnership*, 82 B.R. 495 (D.Minn.1987), *on remand, In re Joing*, 82 B.R. 500 (Bankr.D.Minn.1987); *In re Kjeldahl*, 52 B.R. 926 (Bankr.D.Minn. 1985); *In re Jacobson*, 48 B.R. 497 (Bankr. D.Minn.1985). The litigation of the other counts of Debtor's adversary proceeding promises to be equally intensive, both factually and legally. Debtor lacks independent resources to fund any of this litigation, and apparently proposes to do so with an infusion of money from third parties. Such a transaction would constitute a post-petition extension of credit to Debtor; this in itself would require prior court approval, available only after notice, hearing, and the making of appropriate findings under 11 U.S.C. § 364. Even if court-authorized, such a transaction could further complicate the structuring of a plan of reorganization. Debtor's current counsel does not seem to acknowledge these further complications of the proposed effort.

■ This whole process portends several years of litigation. The outcome is wholly conjectural at present. Recovery of the properties would be only the first step in Debtor's rehabilitation. If a Chapter 11 debtor, as here, has lost assets essential to its operation, and must regain them

---

**9.** In pertinent part, this statute provides:
... [I]f applicable nonbankruptcy law ... fixes a period within which the debtor may ... cure a default, or perform any other similar act, and such period has not expired before the date of filing of the petition, the trustee may only ... cure, or perform, ... before the later of—
(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 60 days after the order for relief.
This provision operates to extend the period for redemption from a mortgage foreclosure sale under Minnesota law, in favor of a Chapter 11 debtor-mortgagor, to a date 60 days after the debtor's bankruptcy filing, if that period otherwise would have expired within that 60 days. *Johnson v. First Nat'l Bank of Montevideo*, 719 F.2d 270 (8th Cir.1983), *cert. denied*, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984).

through the bankruptcy process before it may recommence sustainable operations, the debtor must show that this can be done before the passage of time has materially prejudiced its claim to a share in its market, or its other business prospects. It must also show that it will have the startup capital necessary to its new operations. Lastly, it must make a plausible showing that it can propose a confirmable plan after the recovery of its assets and the recommencement of operations. *Compare United Savings Ass'n of Texas v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 376, 108 S.Ct. 626, 632, 98 L.Ed.2d 740 (1988), *In re Anderson*, 913 F.2d 530 (8th Cir.1990), and *In re Bloomington HH Investors Ltd. Partnership*, 114 B.R. 174 (D.Minn.1990) (in response to motion for relief from stay under 11 U.S.C. § 362(d)(2), Chapter 11 debtor must demonstrate that there is "a reasonable possibility of a successful reorganization within a reasonable time," and essentially must show that it can propose a plan capable of confirmation). To make out a defense to the U.S. Trustee's motion, it was incumbent on Debtor to make a record to demonstrate

that it had at least some chance of achieving every stage of its proposal. On the sparse record presented, however, Debtor's prospects of success are completely unknowable.

The U.S. Trustee met his initial burden under 11 U.S.C. § 1112(b)(1) by demonstrating the existence of an estate almost drained of assets, and by pointing out the nascent status and uncertain merits of Debtor's proposed litigation. At that point, under the posture of this case, the burden shifted back to Debtor to demonstrate the strength of its proposal for rehabilitation. Debtor has failed to carry this burden. It does not argue that it would be the best party to conduct a self-directed final liquidation under Chapter 11, regardless of its prospect of rehabilitation. Even had it done so, however, this would not have furnished an adequate defense to the U.S. Trustee's assertion of "cause" under § 1112(b); [10] there is no evidence that Debtor's administration of these assets promises to be superior to that of a trustee, in any way. The U.S. Trustee has established the grounds for conversion or dismissal of

---

**10.** Cases in which a moribund business debtor seeks to remain in Chapter 11 solely for the purpose of liquidating tangible assets and/or pursuing third-party litigation to bring value into the estate are not uncommon. Where such a debtor is defending a motion under § 1112(b) by arguing that it should remain in possession, the debtor must recognize that administration by Chapter 7 trustee is the preferred vehicle for liquidation under the Bankruptcy Code. If a debtor asserts that it can do a better job of liquidation than a Chapter 7 trustee, the court must carefully scrutinize the propriety of the debtor's use of Chapter 11 remedies; it also must evaluate the economy and possible superiority of alternate remedies under the Bankruptcy Code or state law. Several specific factors are relevant to this inquiry: the debtor's motivation and apparent good faith in continuing to seek Chapter 11 relief, including the possibility that a trustee's investigation might uncover avoidable transfers or other bases for legal action against current management or other insiders; the existence of truly independent officers, directors, and employees who will exercise governance over the reorganization effort by applying principles of management economy, and exercising sound, business-oriented judgment; the centrality of counsel's role in the litigation and liquidation effort; the possibility that coun-

sel, rather than management, may dominate the administration of the estate without full consideration of the estate's fiduciary obligations to creditors; the practical likelihood of achieving the professed goals of the "reorganization" effort within a reasonable time; the cost of and delay in creditors' realization which may result; and the likelihood of a meaningful return to creditors from the process. If the collection and liquidation of assets is in fact the central function of the proposed Chapter 11 process, the self-interest of management, counsel, and other professionals in retaining control must be recognized, as must the possible time- and cost-benefit of vesting that control in a disinterested Chapter 7 trustee. If the central purposes of the debtor's effort are to use avoidance powers to regain lost assets, or to collect accounts receivable and other liquid assets, the comparative feasibility and cost of promptly liquidating such those assets must be the central concern. In some cases, a business debtor can recover value, in greater amounts and/or more quickly, than a bankruptcy trustee, by virtue of familiarity with a specialized industry or market. In such cases, the Court and creditors may be well-put to allow the debtor to remain in possession for liquidation, subject to close monitoring and strict control of expenditures. Such cases, however, are the exception rather than the rule.

this case under § 1112(b)(1).[11]

Upon making this conclusion, the Court then must determine which alternative is in the best interests of creditors and the estate, as between conversion and dismissal. 11 U.S.C. § 1112(b). In the ordinary case, the facts would support a conversion of this case to Chapter 7, with the concomitant appointment of a trustee. At present, the major assets of the estate are causes of action which must be fixed and liquidated to be of any value. Generally speaking, it is in the best interests of creditors to have this done by a disinterested trustee, so the merits of the debtor's third-party claims can be evaluated dispassionately, and so the fruits of a successful litigation can be preserved for ratable distribution.

However, the novel facts of this case raise a further wrinkle. Debtor is "not a moneyed, business, or commercial corporation"; as a result, its case may not be involuntarily converted to one under Chapter 7. 11 U.S.C. § 1112(c); *In re Mandalay Shores Cooperative Housing Ass'n,* 22 B.R. 202, 206 (Bankr.M.D.Fla.1982). As it now stands, the Court's only option is to dismiss this case.

▇▇▇ Dismissal, however, would almost certainly entail the loss of many of the causes of action which Debtor insists are meritorious and substantial. Remedies under 11 U.S.C. § 548 are available only to a trustee or debtor in possession in an ongoing bankruptcy case. Outside of a bankruptcy case,[12] the remedies under Minnesota fraudulent-transfer law are available only to creditors of the debtor-transferor, and not to the debtor itself. *See* MINN. STAT. §§ 513.44–.45 (providing that certain sorts of transfers are fraudulent "as to a creditor"); MINN.STAT. § 513.47 (empowering "a creditor" to obtain various specified forms of relief as to fraudulent trans-

fers); and MINN.STAT. § 513.41(4) (defining "creditor" as "a person who has a claim," "debtor" as "a person who is liable on a claim," and "claim" as "a right to payment ..."). Debtor's asserted causes of action for damages against its former trustees, of course, would survive the dismissal of this case, as would its challenge to the foreclosure sale on procedural grounds; these claims could be pursued by Debtor outside of bankruptcy.

Dismissal would relegate Debtor and its creditors to this loss and other consequences, such as the loss of the automatic stay of 11 U.S.C. § 362(a), and the loss of a single forum for the coordinated resolution of its problems with its creditors. The Court is reluctant to do this, at least without affording Debtor's current governing body the opportunity to evaluate its options in light of this order. Conversion of this case and administration of the causes of action by a Chapter 7 Trustee, of course, would not gain Debtor the benefit which it seeks in Chapter 11. A Chapter 7 trustee's substantial success on the various fraudulent-transfer claims would only result in an asset partly or wholly free of encumbrances, which the trustee would then be obligated to liquidate; it would not result in a resuscitated Debtor back in the business of maintaining one or more fraternity houses. However, the preservation of a long-time institutional presence on a university campus is not a value to which the Bankruptcy Court can accord controlling weight, even if motivated solely by the benign, sentimental affections of fraternity alumni. The orderly adjustment of debtor-creditor relations, and the satisfaction of creditors' claims, are the paramount consideration in this Court's deliberations; the bankruptcy laws mandate no less.

---

**11.** The facts also satisfy § 1112(b)(2), and, possibly, § 1112(b)(3). There is no showing why Debtor did not raise these points in defense of Riverside Bank's motion for relief from stay, and its delay in joining them certainly has prejudiced creditors by the loss of Debtor's sole remaining substantial asset.

**12.** In a bankruptcy case, of course, the "strong-arm" provisions of 11 U.S.C. § 544 vest a trustee or debtor in possession with avoidance powers available under state law to certain sorts of creditors. *In re Greenhaven Village Apts. of Burnsville Phase II Ltd. Partnership,* 100 B.R. 465, 468 (Bankr.D.Minn.1989); *In re Minnesota Utility Contracting, Inc.,* 101 B.R. 72, 76–77 (Bankr.D.Minn.1989), *rev'd in part on other grounds,* 110 B.R. 414 (D.Minn.1990).

All of these are factors which Debtor's current governing body may consider. In some deference to that process, the Court will postpone the entry of an order dismissing this case for a reasonable period of time, to allow Debtor the opportunity to voluntarily convert this case to one under Chapter 7.

IT IS THEREFORE DETERMINED AND ORDERED:

1. That the U.S. Trustee has demonstrated grounds for dismissal of this case under 11 U.S.C. § 1112(b)(1)–(3).

2. That, unless Debtor files a voluntary conversion of this case to one for liquidation under Chapter 7 in an appropriate form, the Court shall enter an order dismissing this case.